IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN RAY TEETS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-1334 |
| | ) |
| JOHN WETZEL, ERIN BROWN, | ) |
| DENISE WOOD, SHELLY FOX, | ) |
| WILLIAM BENNAGE-GREGORY, | ) |
| JENNIFER SHRIFT, JESSICA ROUSH, | ) |
| KELLI ANN PELTER, IRLENE ROSS, | ) |
| SANDI RHOADES, ASHLEY THOMPSON, | ) |
| and BRENDA GOODALL, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and brief in support (Docket Nos. 22, 23), as well as Plaintiff's brief in opposition. (Docket No. 24). For the reasons set forth herein, Defendants' motion is granted in part and denied in part.

**I. Background**

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts relevant to the motion presently before the Court. Plaintiff Justin Ray Teets, formerly an inmate at SCI Mercer, brings this civil rights action pursuant to 42 U.S.C. § 1983 against certain employees of the Pennsylvania Department of Corrections ("DOC") arising out of his incarceration beyond his

1

maximum release date. Specifically, Plaintiff avers in his Second Amended Complaint (Docket No. 20, "Complaint") that because he was resentenced during his period of incarceration, his maximum release date should have been re-calculated as June 28, 2019, but he was not released from custody until seventeen (17) days later, on July 15, 2019. Plaintiff alleges that Defendants' actions caused his over-detention which constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution (Count I), and also that Defendants violated his procedural due process rights under the Fourteenth Amendment (Count II).

Defendants have filed a Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The motion has been fully briefed by the parties, and it is now ripe for decision.

## II. Standard of Review

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

### III. Legal Analysis

#### A. Count I: Alleged Violation of the Eighth Amendment

##### 1. Eighth Amendment Claims Generally

In order to bring a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate the violation of a right secured by the Constitution and the laws of the United States, and that the alleged deprivation of that right was committed by a person acting under color of state law. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). While Defendants here do not argue that their actions did not

occur under color of state law, they do assert that they did not cause Plaintiff to be deprived of a federally secured right.

In certain situations, an inmate's detention beyond his term of imprisonment can constitute cruel and unusual punishment in violation of that individual's Eighth Amendment rights. *See Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017) (citing *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010)); *see also Askew v. Kelchner*, Civ. Action. No. 1:04-CV-0631, 2007 WL 763075, at *4 (M.D. Pa. Mar. 7, 2007) (stating that unnecessary punishment includes incarceration "'without penological justification'" (quoting *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989))). However, the Third Circuit has recognized that "'[t]he administration of a system of punishment entails an unavoidable risk or error,'" and that the "'[e]limination of the risk of error in many instances would be either literally impossible or unfeasible because [it may be] prohibitively costly.'" *Wharton*, 854 F.3d at 241 (quoting *Sample*, 885 F.2d at 1108). Because the Eighth Amendment does not, and cannot, require the elimination of *all* such risk of error, in order to prove that detention beyond a maximum incarceration date was without penological justification, a plaintiff must therefore prove the following:

> (1) a prison official *had knowledge of* the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of *deliberate indifference* to the prisoner's plight; and (3) a *causal connection* between the official's response to the problem and the unjustified detention.

*Montanez*, 603 F.3d at 252 (emphasis added). Furthermore, in a Section 1983 case, in order to establish the requisite personal liability of a defendant, liability cannot merely be predicated on the operation of *respondeat superior*, and the defendant must have personal involvement in the

alleged wrongdoing.  *See DeJoie v. Folino*, Civ. Action No. 14-1147, 2015 WL 4127590, at *2 (W.D. Pa. July 7, 2015) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete,* 845 F.2d at 1207).

### 2. Plaintiff's Eighth Amendment Claim Against the Records Defendants

In Count I of the Complaint, brought pursuant to Section 1983, Plaintiff alleges that Defendants' actions caused him to be over-detained at SCI Mercer, which constituted cruel and unusual punishment in violation of his Eight Amendment rights.  (Docket No. 20, ¶¶ 18, 38-40). Defendants argue in their motion to dismiss that Plaintiff has not pled a plausible Eighth Amendment claim because he has failed to allege that Defendants had personal involvement in the supposed wrongdoing (relevant to part one of the test set forth in *Montanez*).  Defendants further contend that, even if the Court finds that Plaintiff has adequately alleged such personal involvement, Plaintiff has not alleged facts showing that Defendants failed to act expeditiously to release Plaintiff from custody to establish Defendants' deliberate indifference, nor has Plaintiff shown the existence of the requisite causal connection (relevant to parts two and three of the *Montanez* test).

Upon review of the Complaint, the Court finds that Plaintiff adequately alleges that certain Defendants had actual knowledge of and/or acquiesced in his over-detention, thereby satisfactorily pleading the first part of the *Montanez* test.  Specifically, Plaintiff alleges that the job duties of Defendants William Bennage-Gregory, Jessica Roush, Jennifer Shrift, Kelli Ann

5

Pelter, Sandi Rhoades, Brenda Goodall, and Ashley Thompson (the "Records Defendants")[1] included reviewing Plaintiff's arrest records, criminal records, and incarceration dates to ensure that he was not detained beyond his maximum incarceration date.  (Docket No. 20, ¶ 19). Plaintiff further alleges that, during his period of incarceration, each of the Records Defendants reviewed or should have reviewed his inmate records to determine his maximum sentence date. (*Id.* ¶ 20).  Citing a DOC document entitled "Sentence Status Change" (hereinafter, "Sentence Status Change notice")[2] which indicates that Plaintiff had been re-sentenced, Plaintiff avers that the Records Defendants were aware by May 29, 2019 – the date of the Sentence Status Change notice – that Plaintiff had been resentenced on May 10, 2019, and thus that his maximum sentence date required immediate re-examination.  (*Id.* ¶ 21; *see also* Docket No. 20-1).  Plaintiff further alleges that as of May 29, 2019, the Records Defendants knew that if his maximum sentence date was not properly and promptly recalculated, Plaintiff was at risk of being unlawfully detained past his maximum incarceration date.  (Docket No. 20, ¶ 22).

The Court also finds that Plaintiff adequately alleges the Records Defendants' failure to act, indicating deliberate indifference to Plaintiff's plight, the second part of the *Montanez* test. "Among the circumstances relevant to a determination of whether the requisite attitude (deliberate indifference) is present are the scope of the official's duties and the role the official played in the everyday life of the prison."  *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993). In addition to alleging the Records Defendants' job duties (including reviewing Plaintiff's records and ensuring that he was not over-detained) and citing to the Sentence Status Change notice specifically, Plaintiff alleges that Defendants failed to take action to recalculate his

---

[1]     According to the Complaint, at all relevant times, Defendants Bennage-Gregory, Roush, Shrift, Pelter, and Rhoades were all employed by the DOC as records specialists, while Goodall and Thompson were employed by the DOC as Records Supervisors.  (Docket No. 20, ¶¶ 9-15).

[2]     The Sentence Status Change notice is attached to the Complaint as Exhibit 1.  (Docket No. 20-1).

maximum release date to ensure that he would not be incarcerated past that date, which Defendants knew or should have known was June 28, 2019.³ (Docket No. 20, ¶¶ 23-26). Finally, Plaintiff avers that as a result of Defendants' failures, he was unlawfully incarcerated from his maximum release date of June 28, 2019, until July 15, 2019, thereby pleading a causal connection between the Records Defendants' response to Plaintiff's problem and the unjustified detention. (Docket No. 20, ¶ 33; *see also* Docket No. 20-2 (DOC email dated July 15, 2019 (hereinafter "DOC email"), containing the subject line, "RE: URGENT!!!! PAST MAX TEETS NA4694 MAX 6/29/19")).⁴

In sum, upon consideration of the Complaint, the Court notes that Plaintiff has alleged that the Records Defendants were personally involved in and had knowledge of Plaintiff's over-detention problem, that they failed to act under the circumstances, indicating deliberate indifference to Plaintiff's problem, and that a causal connection exists between the Records Defendants' response to Plaintiff's problem and his unjustified detention. Therefore, the Court finds that Plaintiff has pled a plausible Eighth Amendment Claim against the Records Defendants based on his over-detention.

### 3. Plaintiff's Eighth Amendment Claim Against the Supervisor Defendants

Plaintiff alleges in the Complaint that Defendants John Wetzel, Erin Brown, Denise Wood, Shelly Fox, Irlene Ross, Brenda Goodall, and Ashley Thompson (the "Supervisor Defendants")⁵ were in supervisory positions and were policymakers within the DOC, and that

---

³ Although Defendants characterize their actions as having been taken expeditiously, Plaintiff alleges that Defendants knew by May 29, 2019, that he had been resentenced and that his maximum sentence date needed to be re-examined, but that such re-calculation did not occur until over six weeks later – 17 days after his maximum date of release had already passed.

⁴ The DOC email is attached to the Complaint as Exhibit 2. (Docket No. 20-2).

⁵ The Complaint alleges that Defendant Wetzel is the Secretary of the DOC, and that at all relevant times, Brown was the Director of the Office of Population Management and Sentence Computation for the DOC, Wood

they are liable for Plaintiff's over-detention because they failed to correct the constitutionally inadequate system, policies, and procedures for calculating inmates' sentences. (Docket No. 20, ¶¶ 30, 31). Plaintiff also alleges that Defendants John Wetzel and Erin Brown, in their supervisory positions, failed to adequately train, supervise, discipline and/or otherwise oversee records managers and specialists. (*Id.* ¶¶ 28, 29, 32). In their motion to dismiss, Defendants argue that Plaintiff has alleged no facts to support his claims against the Supervisor Defendants, nor are there any specific instances alleged relative to Plaintiff or any inmate where the Supervisor Defendants acquiesced in the use of a constitutionally inadequate computing system.

The Third Circuit has identified two ways in which a supervisor-defendant can be liable for unconstitutional acts undertaken by subordinates in a Section 1983 action. *See DeJoie v. Folino*, Civ. Action No. 14-1147, 2015 WL 4127590, at *2 (W.D. Pa. July 7, 2015). "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.* "'Failure to' claims—failure to train, failure to discipline, or failure to supervise—are generally considered a subcategory of policy or practice liability." *DeJoie*, 2015 WL 4127590, at *2.

---

was the Records Administrator for the Office of Population Management and Sentence Computation for the DOC, Fox and Ross were employed by the DOC as Assistant Records Administrators, and (as noted previously) Goodall and Thompson were employed by the DOC as Records Supervisors. (Docket No. 20, ¶¶ 4-8 14-15).

The Third Circuit has developed a four-part test for supervisor liability on an Eighth Amendment claim for failure to supervise, as set forth in *Sample v. Diecks*, 885 F.2d 1099 (1989):

> The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. *Sample*, 885 F.2d at 1118; *Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3d Cir. 2001). In this Circuit, when a plaintiff seeks to hold a defendant liable under the Eighth Amendment in his or her role as a supervisor, "Sample's four-part test provides the analytical structure . . . it being simply the deliberate indifference test applied to the specific situation of a policymaker." *Whetzel*, 256 F.3d at 135.

*DeJoie*, 2015 WL 4127590, at *3; *see Beers-Capitol v. Whetzel*, 256 F.3d 120, 134-35 (3d Cir. 2001).

*Sample* further indicates one way that a plaintiff can make out a supervisor liability claim, which is "by showing that 'the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries.'" *Beers-Capitol*, 256 F.3d at 134 (quoting *Sample*, 885 F.2d at 1118). "But that is not the only way to make out such a claim, as 'there are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings [1] of the existence of an unreasonable risk, [2] of knowledge of that unreasonable risk, and [3] of indifference to it.'" *Id.* (quoting *Sample*, 885 F.2d at 1118). Thus, the *Sample* four-part test can be met by either (1) "showing that the supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiffs';" or (2) "showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support finding that the four-part test is met." *Id.* at 136-37 (quoting

9

*Sample*, 885 F.2d at 1118). Notably, although *Sample* had concerned whether a supervisor could be liable for a subordinate's Eighth Amendment tort, while the plaintiffs in *Beers-Capital* seemed to claim that the supervisors committed their own Eighth Amendment violations by implementing defective policies, the Third Circuit remarked in *Beers-Capitol* that it did not think that difference material and thus proceeded to use the same tests in both analyses. *See id.* at 134.

Here, Plaintiff appears to allege two theories of liability with regard to the Supervisor Defendants. First, Plaintiff seems to allege that all the Supervisor Defendants are liable for failing to correct certain deficient DOC policies. Specifically, Plaintiff alleges that the Supervisor Defendants were in supervisory positions and were policymakers within the DOC, that they were all aware that the DOC system, policies and procedures for computing inmates' sentences and correcting errors in sentence computation were constitutionally inadequate, and that they failed to improve the system or to take necessary action to correct it. (Docket No. 20, ¶¶ 30, 31).

Second, Plaintiff appears to allege that Defendants Wetzel and Brown are liable for failure to supervise and train employees. Specifically, Plaintiff alleges that "in the scope and authority of their supervisory positions," Wetzel and Brown failed to adequately train, supervise, discipline and/or otherwise oversee records managers and specialists, and thereby created an unreasonable risk that Plaintiff's rights would be violated. (Docket No. 20, ¶ 32). Plaintiff further avers that Defendant Wetzel was responsible for the day-to-day operation of the prison system including oversight of the department of Population Management and Sentence Computation, which is responsible for the computation of inmate sentences, and that Defendant Brown was responsible for ensuring that inmates' sentences were correctly calculated. (*Id.* ¶¶ 28, 29).

As to all Defendants, Plaintiff alleges that, as a result of all their failures and without cause or justification, he was unlawfully incarcerated past his maximum detention date. (Docket No. 20, ¶¶ 33-34). Further, Plaintiff attached to the Complaint the Sentence Status Change notice as well as the DOC email, described *supra*, both of which lend additional factual support to his allegations. (Docket Nos. 20-1, 20-2).

As explained above, Defendants argue in their motion to dismiss that Plaintiff's claims against the Supervisor Defendants should be dismissed because he has alleged no facts to support his claims, nor has he alleged any specific instances relative to Plaintiff or any inmate where the Supervisor Defendants acquiesced in the use of a constitutionally inadequate computing system. Upon review of the Complaint, however, the Court finds that Plaintiff has in fact alleged adequate facts in support of his claims against the Supervisor Defendants. Although the Court agrees that Plaintiff does not allege a pattern of past occurrences in the Complaint, the Court has considered whether Plaintiff has alleged facts sufficient to show that the second method of showing deliberate indifference on the part of the Supervisor Defendants is met. Based on the above allegations, the Court finds that Plaintiff has adequately pled the existence of "so great and so obvious" a risk of constitutionally cognizable harm, over-detention under the circumstances presented, that the risk and the Supervisor Defendants' failure to respond to that risk – by correcting the constitutionally inadequate system, policies and procedures for computing inmates' sentences and correcting errors in sentence computation – supports a finding that the *Sample* test has been met with regard to Plaintiff's claims against the Supervisor Defendants based on alleged policy-making inadequacies. *See Beers-Capitol*, 256 F.3d at 136-37; *Sample*, 885 F.2d at 1118. Similarly, based on the above allegations, the Court finds that Plaintiff has sufficiently pled the existence of "so great and so obvious" a risk of constitutionally cognizable

11

harm that the risk and the failure of Defendants Wetzel and Brown to respond to that risk – by adequately training, supervising, disciplining and/or otherwise overseeing the records managers and specialists – supports a finding that the *Sample* test has been met with regard to Plaintiff's claims against Wetzel and Brown based on such failures to supervise/train.  The Court notes, however, that while Plaintiff does aver a plausible Eighth Amendment claim against the Supervisor Defendants and thus survives their motion to dismiss at this early juncture, the sufficiency of his pleading in this regard just barely suffices and will need to be backed up by evidence, as to each such Defendant, as the case progresses.

Therefore, the Court finds that Plaintiff has alleged a plausible Eighth Amendment claim against the Supervisor Defendants based on his incarceration past his maximum release date. Accordingly, to the extent Defendants' motion seeks dismissal of Count I of Plaintiff's Complaint, that motion is denied.

### B. Count II:  Alleged Violation of Procedural Due Process Under the Fourteenth Amendment

In Count II of the Complaint, Plaintiff alleges that all Defendants denied him his Fourteenth Amendment right to procedural due process in relation to his over-detention.  (Docket No. 20, ¶¶ 24, 41-44).  In their motion to dismiss, Defendants argue that Plaintiff has not stated a plausible procedural due process claim because he has not alleged that he gave "an opportunity to 'someone having authority to decide the challenge['] to the calculation of his release date." (Docket No. 23 at 7-8 (quoting *Sample*, 885 F.2d at 115)).

In order for a plaintiff to state a claim for violation of procedural due process rights pursuant to 42 U.S.C. § 1983, he must adequately allege five things:

> (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation

> without due process; (4) that the defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Sample*, 885 F.2d at 1113.

Upon consideration of the Complaint, the Court finds that Plaintiff has adequately pled the first factor required to show a violation of procedural due process rights in that Plaintiff alleges that he was deprived of his liberty interest by being forced to remain incarcerated past his maximum detention date (Docket No. 20, ¶¶ 18, 22, 31, 35, 44), without penological justification, which is an interest protected under the Eighth Amendment's proscription against cruel and unusual punishment, as discussed *supra*. *See Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993).

In considering whether Plaintiff has adequately pled the second factor of his claim, that the deprivation of his constitutional rights was without due process, the Court must determine whether Plaintiff has alleged that Defendants denied him of "notice and opportunity for hearing appropriate to the nature of the case." *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965). Upon review of the Complaint, however, the Court notes that Plaintiff does not allege that he did not receive notice and an opportunity for a hearing. The Complaint alleges that Defendants knew that Plaintiff had been re-sentenced and that his maximum sentence date needed to be re-examined, that Defendants failed to take action to ensure that Plaintiff would not be incarcerated past his maximum sentence date, and that Defendants failed to calculate Plaintiff's maximum sentence date until July 15, 2019. (Docket No. 20, ¶¶ 21-26). However, the Complaint is entirely silent as to whether Plaintiff was – or was not – provided with notice or an opportunity for a hearing with regard to his release date.[6] The Court thus finds that Plaintiff has failed to

---

[6] Defendants also point out that Plaintiff does not allege that he raised concerns about his release date with any of the Defendants, or with anyone at all.

allege that the deprivation of his rights occurred without due process, the second factor of a due process claim. Since Plaintiff has failed to allege that factor, the Court need not proceed to determine, further, whether Plaintiff has adequately alleged that all Defendants subjected him, or caused him to be subjected to, the deprivation of his rights without such due process.

Therefore, the Court finds that Plaintiff has failed to state a plausible claim against Defendants for violation of his procedural due process rights. Accordingly, to the extent that Defendants' motion seeks the dismissal of Count II for failure to state a claim upon which relief can be granted, the motion is granted.

### IV. Conclusion

For the reasons stated, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted is granted in part and denied in part. To the extent Defendants' motion seeks the dismissal of Count I of the Complaint, the motion is denied. To the extent Defendants' motion seeks the dismissal of Count II of the Complaint, the motion is granted. Accordingly, Count II of the Complaint is dismissed without prejudice to amendment with sufficient facts to state a claim upon which relief can be granted.

An appropriate Order follows.

Dated:  September 22, 2022				*s/ W. Scott Hardy*
						W. Scott Hardy
						United States District Judge

cc/ecf:  All counsel of record